FILED
2024 Nov-04  PM 12:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF ALABAMA

### SOUTHERN DIVISION

FILED

2024 NOV -4  A 8:44

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| COMMAND INVESTIGATIONS LLC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V | ) | Case No. 5:04-cv- DP |
| | ) | 5:24-CV-1502-CLM |
| | ) | |
| THOMAS FOSSETT | ) | |
| Defendant. | ) | |

**Notice Of Removal to Federal Court Based on Constitutional Violations, State Law Violations, and Multistate Coordinated Actions**

**TO THE HONORABLE JUDGE OF THIS COURT:**

**COMES NOW the Defendant, Thomas Fossett, pro se, and hereby gives notice of removal of Case No. CV-2024-900312.00 from the Circuit Court of Alabama to the United States District Court for the Northern District of Alabama, Huntsville Division, pursuant to 28 U.S.C. §§ 1331,**

1

**1332, 1441, and 1446.** The grounds for removal include **federal question jurisdiction, diversity jurisdiction, and coordinated actions by Plaintiffs, involving constitutional violations under the First, Fourth, and Fourteenth Amendments.** Additionally, this notice addresses **Plaintiffs' alleged misuse of judicial processes across multiple states to suppress exculpatory evidence and prevent a fair defense,** potentially implicating **obstruction of justice and evidence tampering under federal law."**

## Introduction and Basis for Removal

This action arises from a **coordinated, multistate legal strategy** orchestrated by **Command Investigations, LLC, Abacus Research, Inc.,** and their attorneys, **Scott Tippett, Peter French, and Jason Covert**. Plaintiffs pursued nearly simultaneous lawsuits, TROs, and preliminary injunctions across **Alabama and North Carolina**, coercively seeking to compel **Thomas Fossett** to relinquish "**all copies and originals**" of critical exculpatory evidence, silence his ability to defend himself, and obstruct his legal challenges. An Alabama settlement offer further demanded **submission to North Carolina jurisdiction on all injunctive matters** and required Defendant to **withdraw his motion to disqualify Plaintiffs' attorney** due to his **participation in the interstate transportation of stolen property**—underscoring Plaintiffs' multistate strategy to manipulate jurisdiction and restrict Defendant's legal recourse.

Throughout these proceedings, the courts repeatedly granted relief to Plaintiffs **without the legal requirement of evidence of falsity**. This pattern of judicial orders—including **TROs, preliminary injunctions, and restrictive measures**—was issued solely on Plaintiffs' affidavits, **shifting the burden improperly onto the Defendant to prove his innocence**.

**Chronology of Events**

1) **September 3, 2024**

a) **Complaint filed in Alabama, Plaintiff admits possession of exculpatory evidence,** but initiates defamation claims and seeks damages and injunctive relief **without presenting any evidence of falsity**. (See **Exhibit A1**)

2) **September 4, 2024**

   a) **Temporary Restraining Order (TRO) issued in Alabama**, restricting Defendant's communications and publications, **granted without the legal requirement of evidence of falsity**. (See **Exhibit A2** Page 1, ¶ 2)

3) **September 9, 2024**

   a) **Complaint filed in North Carolina**, mirroring Alabama's claims and injunction demands: **Plaintiff again admits to possessing exculpatory evidence** yet files the complaint **absent any evidence of falsity**. (See **Exhibit A3**)

4) **September 17, 2024**

   a) **Temporary Restraining Order (TRO) granted in North Carolina**, ordering Defendant to refrain from specific actions. Hearing scheduled for **September 24, 2024**, to address the preliminary injunction, **granted without the legal requirement of evidence of falsity**. (See **Exhibit A4** Page 1, ¶ 2)

5) **September 26, 2024**

   a) **Plaintiffs issued a settlement offer demanding the relinquishment of Defendant's property and including terms designed to influence judicial outcomes in both Alabama and North Carolina**. The offer attempted to **deny Defendant's access to exculpatory evidence** and **interfere with legal representation**, violating **18 U.S.C. § 1503** (*Obstruction of Justice*), **18 U.S.C. § 1512** (*Tampering with Evidence*), **18 U.S.C. § 371** (*Conspiracy*), as well as **state laws on Civil Conspiracy and Abuse of Process**. Defendant **rejected this offer as illegal**, deeming its **coercive terms** an attempt to **force the turnover of exculpatory evidence** and **impose restrictions** that would infringe upon **constitutional rights**. (See Exhibit X, Page 1, ¶¶ 4-9).

6) **September 30, 2024**

   a) **Preliminary Injunction Hearing in Alabama**; Defendant's absence due to attorney negligence. The court grants the injunction based solely on Plaintiffs' affidavits, **granted without the legal requirement of evidence of falsity.** (See **Exhibit A5**)

7) **October 1, 2024**

   a) **Preliminary Injunction Hearing in North Carolina**; Defendant attended, confirming compliance with prior requests for content removal. The injunction was **granted without the legal requirement of evidence of falsity.** (See **Exhibit A6**)

8) **October 2, 2024**

   a) **Alabama Preliminary Injunction Order**, requiring Defendant to turn over all originals and copies of specific evidence, **granted without the legal requirement of evidence of falsity.** (See **Exhibit A5** Page 2, ¶ 2)

9) **October 3, 2024**

   a) **North Carolina Preliminary Injunction Order**, reinforcing restrictions on Defendant's communications and publication, **prevents Defendant from making any report to law enforcement about the Plaintiffs, granted without the legal requirement of evidence of falsity.** (See **Exhibit A6**.1, Page 2, ¶ 1)

10) **October 3, 2024**

   a) Defendant filed a Motion to Stay in the Alabama state court based on violations of **Due Process, state and Constitutional law,** seeking a **temporary halt** on the preliminary injunction to allow time for **defense preparation** and address **due process concerns** regarding **procedural fairness.** (See **Exhibit A6**.2, Page 1, ¶ 2)

11) **October 3, 2024**

   a) **The Alabama state court denied the Motion to Stay on the same day it was filed,** dismissing **Defendant's request without providing time for a substantive review.** This **expedited denial exemplifies the court's disregard for due process considerations.** (See **Exhibit A6**.3, Page 1, ¶ 3)

12) **October 17, 2024**

    a) **Plaintiff's Motion for Summary Judgment**, seeking a **permanent injunction along with claims of defamation and deceptive trade practices.** (See **Exhibit A7**, Page 2, ¶ 4)

13) **October 28, 2024**

    a) **Docket Notice for November 4, 2024, hearing on Plaintiff's Motion for Summary Judgment and all pending motions.** (See **Exhibit A8**, Page 1, ¶ 1)

**Conclusion**

For these reasons, Defendant **Thomas Fossett** respectfully requests that this Honorable Court **remove the case to the United States District Court for the Northern District of Alabama**. The case presents **substantial federal questions**, involves **significant violations of Constitutional Rights**, and includes a **coordinated, multistate conspiracy to obstruct justice in violation of violation of 18 U.S.C. § 1503 and 18 U.S.C. § 371**. Removal is essential to ensure that Defendant's **First, Fourth, and Fourteenth Amendment rights** are protected and to address Plaintiffs' **systematic efforts to suppress exculpatory evidence and manipulate the judicial process.**

## Basis for Removal

1) **First Amendment Violation: Coordinated Legal Filings to Suppress Speech**

    a) Plaintiffs initiated nearly identical legal actions in **Alabama on September 3, 2024, and North Carolina on September 9, 2024**, each seeking to restrict Defendant's ability to speak on matters of public concern (See Exhibit A2, Page 1, ¶ 2 - Exhibit A4, Page 1, ¶ 2). These actions were preceded by a series of **coordinated cease-and-desist demands** on **July 17, July 19, July 26, 2024 and August 28, 2024** (See Exhibit B1, Page 1, ¶ 3 - Exhibit B2, Page 1, ¶ 2 - Exhibit B3, Page 2, ¶ 4 - Exhibit B4, Page 2, ¶ 1) which escalated with legal filings and subsequent TROs in both states. The TRO in Alabama was issued on **September 4, 2024**, followed by a TRO in North Carolina on **September 17, 2024**. This systematic approach culminated in preliminary injunctions that restricted Defendant's speech on matters

involving Plaintiffs and their associates' alleged activities. By leveraging courts to impose these restrictions without requiring **proof of falsity**, Plaintiffs effectively used legal tools to silence Defendant's protected speech, thereby violating his **First Amendment rights**.

b) ***Federal Interest:*** Federal court intervention is necessary to address this substantial First Amendment violation and to prevent misuse of state courts to suppress protected speech.

2) **Fourth Amendment Violation: Forced Relinquishment of Exculpatory Evidence**

    a) Through TROs, coercive settlement offers, and Preliminary Injunctions,

        i) **Plaintiffs demanded, and courts granted, orders requiring Defendant to relinquish "all copies and originals"** of critical exculpatory evidence (See **Exhibit A5**: Page 2, ¶ 2 and **Exhibit A6**.1, Page 2, ¶ 1), including video footage of the **Seguin's' theft of Defendant's property and certified police records**.

        ii) This evidence substantiates Defendant's claims by **capturing criminal acts committed by Alabama Plaintiffs' associates, Paul and Melinda Seguin, who are also the North Carolina Plaintiffs**.

        iii) However, the courts issued these orders **without requiring Plaintiffs in either state to produce the certified records and home surveillance video they admitted to possessing** to meet the burden of proving falsity.

        iv) This effectively allowed Plaintiffs to remove critical evidence from Defendant's control without evidentiary support, infringing upon Defendant's Fourth Amendment rights to retain possession of his property.

    b) ***Federal Interest:*** The **state court's unreasonable seizure of exculpatory evidence** without requiring plaintiffs to prove falsity underscores the need for **federal review to protect Defendant's Fourth Amendment rights** and prevent judicial orders from being used to suppress evidence unlawfully.

3) **Systematic Due Process Violations Across State Lines**

    a) Both the Alabama and North Carolina courts failed to uphold Defendant's **due process rights** in crucial ways:

b) **In Alabama**, the preliminary injunction was granted **in Defendant's absence at the September 30, 2024 Settlement Hearing**, due to a miscommunication from Defendant's attorney, who mistakenly informed him that there would be no hearing (See **Exhibit C1** Page 1, ¶ 1). **Defendant's attorney alerted the judge to this miscommunication**, yet the court proceeded without allowing Defendant to respond, issuing the injunction based solely on plaintiffs' unsubstantiated claims.

c) **In North Carolina**, though Defendant was present, the court did not require plaintiffs to provide proof of falsity, instructing Defendant that he would need to submit evidence to defend himself. This **contradicts North Carolina law and the North Carolina Rules of Civil Procedure (NCRCP)**, which place the **burden of proof on the plaintiffs** in defamation cases. (See **Exhibit A6**.1, Page 2, ¶ 1)

d) *Federal Interest:* The **failure of these courts to follow procedural safeguards** underscores a need for federal review, as these actions **collectively violate Defendant's Fourteenth Amendment** rights by denying him a fair opportunity to participate and defend himself.

4) **Multistate Conspiracy and Judicial Manipulation under 18 U.S.C. § 371**

a) Attorneys **Tippett and French** actively facilitated cross-state actions to support plaintiffs' coordinated strategy, including the **interstate transport of Defendant's stolen property** (See **Exhibit C2,** Page 1, ¶ 2) and coercive settlement demands that required submission to North Carolina jurisdiction on all injunctive matters (See **Exhibit X, Page 6, ¶ 17.**). This coordinated misuse of judicial processes, involving cross-state jurisdictional manipulation and collusion to prevent fair adjudication, constitutes a federal conspiracy under **18 U.S.C. § 371.**

b) *Federal Interest:* This **multistate conspiracy to suppress evidence and obstruct justice** necessitates federal intervention, as **only a federal court can adequately address the interstate nature of this coordinated misconduct**.

**Conclusion:**

For these reasons, Defendant **Thomas Fossett** respectfully requests that this Court remove the case to the **United States District Court for the Northern District of Alabama** to address substantial federal questions, including violations of the **First, Fourth, and Fourteenth Amendments**, and to prevent plaintiffs' ongoing efforts to suppress exculpatory evidence, manipulate jurisdiction, and obstruct justice.

## A. Federal Jurisdiction Grounds

1) **Federal Question Jurisdiction (Constitutional Violations)**

   This Court has jurisdiction under **28 U.S.C. § 1331** because the case involves federal questions arising from violations of the **First Amendment** and **Fourteenth Amendment** to the United States Constitution.

   a) **First Amendment Violations:**

   i) **Alabama State Court:**

   (1) The **Alabama state court's preliminary injunction (See Exhibit A5**, Page 3, ¶ 1, Page 3, ¶ 4), in violation of the **First Amendment to the United States Constitution, Alabama defamation law under Ala. Code § 6-5-182**, and the **Alabama Rules of Civil Procedure (ARCP) Rule 65**, improperly restricts Defendant's **constitutionally protected speech** and his right to present **exculpatory evidence** in defense against plaintiffs' defamation and related claims. The injunction unlawfully prevents Defendant from making **truthful statements** regarding plaintiffs and their business partners' **criminal activity captured on home security video (See Exhibit D1**, Page 1, ¶ 3) and the **felony status of Bradley Walters**—facts substantiated by **certified criminal records**(See Exhibit D2, Page 2, ¶ 1)**, FOIA information from the Arkansas State Police (See Exhibit D3**, Page 1, ¶ 1), and the **affidavit of private investigator Paul Dillon** confirming Walters' status as a convicted felon and

unlicensed investigator (See **Exhibit D4**, Page 1, ¶ 4). By enforcing plaintiffs'
request to silence Defendant's **truthful statements regarding plaintiffs'
business partners' criminal activity and other matters of public concern**, the
**state court has disregarded these procedural requirements** and imposed an
**unconstitutional restriction on Defendant's free speech**. Defendant's speech—
including statements backed by certified felony records and video evidence of
**plaintiffs' business partners engaged in larceny** against the Defendant—is
safeguarded under the First Amendment, particularly when addressing **public
safety** and **exposing alleged misconduct**.

(2)  **In the Summary Narrative provided by Horry County Police Department,
the Seguin's claimed they were retrieving their own property. However,
video evidence, included herein, shows that the only property they removed
was Defendant's personal property, as well as property that Command
Investigations' C.O.O., Jason Chofooklun, specifically requested the
Defendant retain until outstanding invoices were paid. This
misrepresentation highlights significant factual disputes that were
overlooked in the state proceedings and underscores the necessity for federal
oversight to ensure due process.** (See **Exhibit D1**, Page 1, ¶ 3; **Exhibit A5**.2,
Page 1, ¶ 2)

(a)  **Alabama law requires plaintiffs in defamation cases to provide clear
evidence of falsity,** particularly when **injunctive relief** is sought, as
established in **New York Times Co. v. Sullivan**, 376 U.S. 254 (1964), and
affirmed by Alabama courts, including in **Ex parte Bole**, 103 So. 3d 40 (Ala.
2012).

(b)  However, the judge **granted the preliminary injunction based solely on
plaintiffs' affidavits**, without requiring them to meet the **evidentiary
burden of proof necessary to restrict speech on matters of public**

interest. This omission disregarded the **constitutional standard necessary to protect free speech rights** in cases involving alleged defamation.

(3) The Alabama state court's imposition of this preliminary injunction—**knowing Defendant was absent due to attorney neglect** and **failing to require plaintiffs to substantiate their defamation claims with evidence of falsity**—necessitates **federal intervention** to uphold the Defendant's **First Amendment protections** and ensure **procedural fairness**. (See **Exhibit C1**, Page 1, ¶ 2; **Exhibit A5**, Page 3, ¶ 1)

ii) **North Carolina State Court:**

(1) The **North Carolina state court's preliminary injunction**, in violation of the **First Amendment to the United States Constitution, North Carolina defamation standards**, and **North Carolina Rule of Civil Procedure (NCRCP) Rule 65**, improperly restricts Defendant's **constitutionally protected speech** and his right to present **exculpatory evidence** in defense against plaintiffs' defamation and related claims. Unlike Alabama, North Carolina defamation law places an even more rigorous burden on plaintiffs to demonstrate **clear evidence of falsity**, especially when seeking injunctive relief. The North Carolina injunction prevents Defendant from making **truthful statements** regarding plaintiffs and their business partners' **criminal activity captured on home security video, the Seguin's, who owned Abacus Research,** and the **felony status of Bradley Walters**—facts substantiated by **certified criminal records, FOIA information from the Arkansas State Police**, and the **affidavit of private investigator Paul Dillon. Prevents the Defendant from reporting to law enforcement about the Plaintiffs**. These statements, which address matters of **public concern**, are essential to public safety and awareness. Nevertheless, the judge granted the preliminary injunction based solely on **plaintiffs' affidavits**, failing to meet the **high evidentiary burden of proof**

required to restrict Defendant's **constitutionally protected speech**. (See **Exhibit A6**.1, Page 2, ¶ 1; **Exhibit A4**, Page 1, ¶ 3; **Exhibit D1**, Page 1, ¶ 3; **Exhibit D2**, Page 2, ¶ 1; **Exhibit D3**, Page 1, ¶ 1; **Exhibit D4**, Page 1, ¶ 4)(**Exhibit A4** Septe

(2) The North Carolina state court's imposition of this injunction—**without requiring plaintiffs to provide evidence of falsity**—constitutes an **unconstitutional prior restraint** and necessitates **federal intervention** to uphold Defendant's **First Amendment rights** and enforce compliance with **North Carolina procedural requirements**. (See **Exhibit A6**.1, Page 2, ¶ 1; **Exhibit A4**, Page 1, ¶ 3)

iii) **Legal Basis**

(1) **Public Concern and Actual Malice Standards**: *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), established that speech on matters of public concern is protected under the First Amendment unless proven false and malicious. Defendant's statements, supported by documented evidence, fall under protected speech in both federal and state contexts, requiring **clear evidence of falsity and actual malice** for restriction.

(2) **Unconstitutional Prior Restraint**: *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976), held that prior restraints are presumptively unconstitutional, especially when imposed without compelling evidence of falsity or harm. The preliminary injunctions in Alabama and North Carolina fail to meet this constitutional requirement, as well as **procedural standards for injunctive relief** set by each state's rules of civil procedure.

(3) **Requirement for Evidence of Falsity in Defamation Claims**: *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767 (1986), reinforces that in defamation cases involving matters of public concern, plaintiffs bear the burden of proving the falsity of the statements in question. Both Alabama and North Carolina courts

failed to impose this evidentiary burden on plaintiffs, resulting in a violation of **procedural fairness** and Defendant's **First Amendment rights**.

(4) **Protection of Truthful Speech Concerning Criminal Conduct**: *Garrison v. Louisiana*, 379 U.S. 64 (1964), clarified that the First Amendment protects truthful statements about criminal conduct, especially when addressing public officials or matters of public interest. Defendant's statements about plaintiffs' business partners' criminal activities are therefore **protected by the First Amendment**, particularly given the **evidence supporting their truthfulness**.

(5) **Injunctions Against Defamation and the First Amendment**: *Organization for a Better Austin v. Keefe*, 402 U.S. 415 (1971), ruled that even speech perceived as damaging to reputation cannot be enjoined without clear evidence of falsehood and harmful intent. The preliminary injunctions in Alabama and North Carolina lack the required evidence, constituting an unconstitutional prior restraint and further justifying **federal oversight**.

2) **Fourth Amendment (Unreasonable Seizure of Property Violations):**

a) **Alabama State Court**: The **Alabama state court's preliminary injunction**, in violation of the **Fourth Amendment to the United States Constitution**, Ala. Code § 6-5-182, and the **Alabama Rules of Civil Procedure (ARCP) Rule 65**, compels Defendant to turn over **personal, private home surveillance videos** documenting the **criminal theft of Defendant's property by plaintiffs' business partners, the Seguin's.** This injunction was granted solely based on **plaintiffs' affidavits** (See **Exhibit E1**, Page 1, ¶ 2; **Exhibit E2**, Page 1, ¶ 3; **Exhibit E3**, Page 1, ¶ 4; **Exhibit E4**, Page 2, ¶ 1), without requiring them to provide **evidence of falsity**, as mandated under Alabama law. The court's disregard for **state procedural standards** and **constitutional protections** constitutes an **unreasonable seizure** of Defendant's private property. By mandating that Defendant surrender these videos without a valid warrant or substantial legal justification, the

Alabama court infringes upon Defendant's **constitutional rights** to be secure in his property, free from **unwarranted state or judicial seizure**.

    i)    The Alabama state court's preliminary injunction, granted in contravention of the **United States Constitution, Alabama law, and the ARCP**, compels Defendant to relinquish **private property critical to his defense**. This **procedural and constitutional oversight** underscores the need for **federal intervention** to protect Defendant's **Fourth Amendment rights**.

b)  **Legal Basis**

    i)    **Protection Against Unreasonable Seizures**: *Soldal v. Cook County*, 506 U.S. 56 (1992), established that the **Fourth Amendment** applies to civil cases involving property seizure, affirming that private property cannot be seized without clear legal basis, particularly without procedural safeguards.

    ii)    **Warrant Requirement and Proper Justification**: *Camara v. Municipal Court of City and County of San Francisco*, 387 U.S. 523 (1967), emphasizes that Fourth Amendment protections require either a **valid warrant** or **substantial legal justification** for judicial or state-enforced intrusions on personal property. The Alabama court's injunction, issued without a warrant, falls short of this constitutional standard.

    iii)    **Evidentiary Standards for Injunctive Relief in Alabama Defamation Law**: Under **Ala. Code § 6-5-182** and **ARCP Rule 65**, plaintiffs seeking injunctive relief that involves property seizure must provide **clear evidence of falsity** in defamation cases. The court's failure to demand evidence of falsity from plaintiffs violates procedural fairness and demonstrates a disregard for **Defendant's Fourth Amendment rights**.

    iv)    **Protection Against Seizure of Evidence Critical to Defense**: *Fuentes v. Shevin*, 407 U.S. 67 (1972), further affirms that seizure of property essential to an individual's defense without due process or evidentiary justification is a Fourth Amendment violation. The Alabama court's order to seize surveillance videos, which document

criminal activity pertinent to Defendant's defense, contravenes this constitutional

protection.

c)  **Need for Federal Intervention to Ensure Constitutional Compliance**: In cases where

state courts fail to uphold constitutional rights in property seizure, **federal courts are**

**vested with the authority** to intervene, ensuring that state actions do not infringe upon

federal protections under the Fourth Amendment.

3)  **Fourteenth Amendment (Due Process Violations Regarding Property Rights):**

a)  The **Alabama state court's preliminary injunction** violates **Defendant's due process**

**rights** under the **Fourteenth Amendment to the United States Constitution** by

compelling the **turnover of property** that the plaintiffs, in prior communications, had

explicitly agreed Defendant could retain until a **financial dispute** was resolved (See

**Exhibit A5**, Page 3, ¶ 9; Page 4, ¶ 9; **Exhibit A5**.1, Page 1, ¶ 2; **Exhibit A5**.2, Page 1, ¶

1). This injunction disregards **due process requirements** by depriving Defendant of his

property rights under agreed-upon terms, without providing a **fair and impartial legal**

**process** to address the financial arrangement. By ordering the relinquishment of property

without honoring the initial agreement, the Alabama court has deprived Defendant of

**property interests** in violation of **Fourteenth Amendment due process protections**.

b)  **Legal Basis**

i)   **Due Process and Property Rights**: *Board of Regents v. Roth*, 408 U.S. 564 (1972),

established that the **Fourteenth Amendment** protects individuals' legitimate claims

to property interests, which cannot be deprived without **fair procedures**. Defendant's

property rights, based on the plaintiffs' prior agreement, require procedural

protections before any deprivation.

ii)  **Right to Retain Property Until Resolution of Financial Disputes**: *Mathews v.*

*Eldridge*, 424 U.S. 319 (1976), supports that due process necessitates a **fair and**

**impartial hearing** before property is seized, particularly when the individual has a

prior agreement to retain the property. The court's failure to provide a hearing regarding the agreement violates **due process rights**.

    iii) **Procedural Safeguards in Civil Property Seizures**: *Connecticut v. Doehr*, 501 U.S. 1 (1991), reinforces that property interests cannot be overridden in civil cases without **adequate procedural safeguards**. The court's order for Defendant to relinquish property critical to his financial dispute, without honoring the original agreement, infringes on these constitutional protections.

    iv) **Deprivation of Property Without Due Process Justification**: *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), affirmed that individuals must have an **opportunity to respond** before being deprived of property interests. The injunction's disregard for the prior agreement to retain property until financial resolution constitutes a **due process violation** that warrants federal review.

4) **Fourteenth Amendment (Due Process Violations):**

   a) **Alabama: Fourteenth Amendment Violation (Due Process Violations):**

    i) **Constitutional Law, State Law, and Procedural Violations**: The **Alabama state court's preliminary injunction** violates Defendant's **Fourteenth Amendment due process rights** by suppressing **critical exculpatory evidence** and coercing Defendant into **unfavorable settlement terms**. Plaintiffs' actions, along with the court's approval, infringe on Defendant's right to a **fair and impartial legal process** by:

      (1) **Requiring Defendant to relinquish key evidence** without providing an adequate opportunity to present or challenge it in court, contrary to *Chambers v. Mississippi*, 410 U.S. 284 (1973), which ensures due process and the right to present critical evidence. (See **Exhibit A5** Page 2, ¶ 1 )

      (2) **Compelling Defendant into settlement terms** through coercive tactics, under threat of further legal action, instead of allowing a fair adjudication of claims, violating *Boddie v. Connecticut*, 401 U.S. 371 (1971), which holds that due

process is violated when coercive measures restrict fair proceedings. (See **Exhibit A5** Page 2, ¶ 2)

    (3) Violating **Ala. Code § 6-5-182**, which requires evidence of falsity in defamation cases before injunctive relief, can restrict a defendant's ability to present a defense.

    (4) Disregarding **Alabama Rules of Civil Procedure (ARCP) Rule 65**, which mandates that injunctive relief be narrowly applied, justified by compelling evidence, and limited in scope.

  ii) This violation of due process rights disregards Defendant's **constitutional right to due process**, as well as **Ala. Code § 6-5-182** and **Alabama Rules of Civil Procedure (ARCP) Rule 65**, which require that injunctive relief be **narrowly applied,** and **evidence of falsity provided** before any action that would limit a Defendant's ability to defend himself. Given this **procedural and constitutional oversight**, **federal intervention** is necessary to ensure compliance with due process standards and uphold Defendant's **Fourteenth Amendment protections**." (See **Exhibit A5**, Page 3, ¶ 9, Page 4, ¶ 9)

**b) Legal Basis for Alabama**

  i)  **Due Process and Right to Present a Full Defense**: *Chambers v. Mississippi*, 410 U.S. 284 (1973), establishes that **due process** ensures the right to **present critical exculpatory evidence** in defense. Suppressing this evidence violates Defendant's due process rights, guaranteed by the **Fourteenth Amendment**.

  ii)  **Right to Procedural Fairness**: *Goldberg v. Kelly*, 397 U.S. 254 (1970), asserts that **due process** includes the **right to challenge and confront evidence** in a fair hearing. The Alabama court's injunction disregards this right, imposing constraints without procedural fairness.

  iii)  **Protection Against Coercive Legal Actions**: *Boddie v. Connecticut*, 401 U.S. 371 (1971), holds that **due process is violated** when coercive measures restrict an

individual's **meaningful access to fair proceedings**. Coercing Defendant to relinquish defense evidence or consider a settlement rather than fairly adjudicating the matter contravenes due process standards.

    iv) **Requirement for Due Process in Property and Defense Interests**: *Mathews v. Eldridge*, 424 U.S. 319 (1976), underscores that **federal intervention is justified** when state actions infringe on due process, especially involving defense rights. The coercion and evidence suppression necessitate federal review to ensure compliance.

5) **North Carolina: Fourteenth Amendment Violation (Due Process Violations):**

    a) **North Carolina State Court**: The North Carolina state court's preliminary injunction, in violation of the **Fourteenth Amendment to the United States Constitution, N.C. Gen. Stat. § 1-485**, and **North Carolina Rules of Civil Procedure (NCRCP) Rule 65**, has enabled plaintiffs to suppress critical exculpatory evidence and exert undue pressure on Defendant for an adverse settlement. This injunction deprives Defendant of a fair and impartial process by: (See **Exhibit A6**.1, Page 2, ¶ 1)

        i) **Restricting Defendant's right to present and defend evidence** relevant to his claims, critical to ensuring procedural fairness in civil proceedings.

        ii) **Applying coercive pressure** on Defendant to accept settlement terms under the threat of ongoing legal actions, rather than allowing for a fair adjudication of the claims through proper judicial proceedings. (See **Exhibit A6**.1, Page 3, ¶ 2)

    b) The court's actions contravene **N.C. Gen. Stat. § 1-485** and **North Carolina Rules of Civil Procedure (NCRCP) Rule 65** (See **Exhibit A6**.1, Page 2, ¶ 1), which mandate that injunctive relief requires **substantial proof of falsity** before curbing Defendant's ability to defend himself. The **court's approval of these tactics** violates North Carolina due process standards by depriving Defendant of the ability to **confront and present relevant evidence**. This failure to uphold state procedural standards and constitutional protections demonstrates a need for federal intervention to uphold Defendant's due process rights under the Fourteenth Amendment.

6) **Legal Basis (North Carolina)**

    a) **Due Process and Right to Present Evidence**: *Fuentes v. Shevin*, 407 U.S. 67 (1972), affirms that **due process protections** apply to civil cases involving property or critical evidence matters, ensuring individuals retain the right to **challenge or present defense evidence**. The North Carolina court's order suppressing exculpatory evidence in a civil defamation case contravenes this due process standard.

    b) **Procedural Fairness in Civil Proceedings**: *Connecticut v. Doehr*, 501 U.S. 1 (1991), clarifies that civil actions affecting property rights and personal defense require **adequate procedural safeguards** to prevent coercive actions that may limit one's right to a fair defense. The North Carolina court's actions, which deny Defendant these procedural safeguards, demonstrate a need for **federal oversight**.

    c) **Protection Against Coercive Settlement Tactics**: *Boddie v. Connecticut*, 401 U.S. 371 (1971), emphasizes that **due process violations occur** when coercive legal tactics deprive individuals of a fair legal process. Here, the North Carolina court's approach, pressuring Defendant to settle under threat of ongoing injunctive actions rather than through fair adjudication, undermines Defendant's procedural fairness.

    d) **Federal Intervention in Due Process Violations**: *Mathews v. Eldridge*, 424 U.S. 319 (1976), establishes that federal intervention is warranted when **state actions infringe on due process**, particularly where property and defense interests are affected. The **North Carolina court's suppression of evidence** and **coercive settlement pressure** demonstrates the need for federal intervention to uphold Defendant's Fourteenth Amendment rights.

7) **Rule 408 Violations (Coercion and Constitutional Infringements)** (See **Exhibit X**)

    a) **Irrevocable Assignment of Rights and Ownership to Plaintiffs:**

        i) "Defendant hereby irrevocably assigns all of his rights, interests, and ownership to Command of any and all video and/or audio recordings...shall deliver all copies of such recordings to Jason Chofooklun." (See **Exhibit X**, Page 9, ¶ 9)

18

b) **Requirement to Execute and File Agreed Permanent Injunctions**:

    i) "Defendant shall...execute and deliver to Command an agreed permanent injunction...and file the Agreed Permanent Injunctions with the Courts." (See **Exhibit X**, Page 7, ¶ 1)

c) **Exclusive Jurisdiction Clauses for Injunction Enforcement in Multiple States**:

    i) "Two courts shall maintain exclusive jurisdiction and venue to hear and resolve any dispute arising from or relating to this Settlement Agreement or the Agreed Permanent Injunctions...Alabama and North Carolina." (See **Exhibit X**, Page 12, ¶ 17)

d) **Strict Confidentiality Requirement with Penalty for Breach**:

    i) "Defendant shall maintain as confidential this Settlement Agreement...failure to comply will result in forfeiture of the Settlement Payment and reimbursement of Plaintiffs' costs." (See **Exhibit X**, Page 6, ¶ 6)

e) **No Negative Statements Clause and Enforcement Provision**:

    i) "Plaintiffs and Defendant shall not publish, discuss, or otherwise publicly disclose any negative statements about the other." (See **Exhibit X**, Page 8, ¶ 8)

f) **Permanent Waiver of Rights to Bring Any Future Claims**:

    i) "Fossett WAIVES, RELEASES and FOREVER DISCHARGES Plaintiffs...from any and all liability, obligation, causes of action...arising in any way or related to the Settled Claims." (See **Exhibit X**, Page 5, ¶ 5)

g) **Obligations to Certify Compliance under Penalty of Perjury**: Page 7, ¶ 2

    i) "Defendant shall provide to Plaintiffs...certification that he has complied with all aspects of the Agreed Permanent Injunctions." (**See Exhibit X**, Page 7, ¶ 2)

h) **Alabama State Court**: Plaintiffs' **September 26, 2024, settlement agreement**, presented under **Alabama Rule of Evidence 408**, contains terms that are coercive and unconstitutional. While Rule 408 generally bars the use of settlement agreements to prove liability, it does not protect agreements that infringe on constitutional rights or are

19

coercively designed. The settlement agreement compels Defendant to relinquish **critical exculpatory evidence** and issue **public retractions** regarding plaintiffs' criminal activity under threat of additional legal action, thereby violating Defendant's **First Amendment right to free speech** and **Fourteenth Amendment right to due process**. By exploiting Rule 408 in bad faith, plaintiffs exceed the intended protections of the rule, using it instead as a coercive tactic to silence Defendant (See **Exhibit X**, Page 5, ¶ 5; Page 6, ¶ 6; Page 8, ¶ 8; Page 9, ¶ 9).

    i)    **North Carolina State Court**: In parallel, the North Carolina state court's preliminary injunction reinforces plaintiffs' coercive settlement tactics, improperly protecting terms within the **September 26, 2024, settlement agreement** that contravene **North Carolina Rule of Evidence 408**. This settlement agreement not only compels the relinquishment of **exculpatory evidence** but also restricts Defendant's right to **truthful public statements** about plaintiffs' conduct, in violation of the **First Amendment** and **Fourteenth Amendment**. The North Carolina court's approval of these tactics under Rule 408 violates procedural fairness and underscores the plaintiffs' intent to use Rule 408 as a means of coercion rather than for legitimate settlement purposes. (See **Exhibit X**, Page 5, ¶ 5; Page 6, ¶ 6; Page 7, ¶ 1; Page 8, ¶ 8; **Exhibit A6**.1, Page 2, ¶ 1)

8)  **Legal Basis**

    a)    **Limitations of Rule 408 in Coercive Settlements**: *United States v. Hays*, 515 U.S. 737 (1995), clarifies that **Rule 408** does not extend to protect agreements that infringe upon constitutional rights. Where settlement terms exceed reasonable limits, Rule 408 fails to bar the introduction of such terms, particularly when agreements violate due process.

    b)    **Constitutional Safeguards Against Coercive Settlements**: *Boddie v. Connecticut*, 401 U.S. 371 (1971), establishes that **due process** is violated when coercive legal tactics limit access to a fair defense. The settlement demands for retractions and relinquishment of exculpatory evidence exceed the protections of Rule 408 and constitute coercion.

c) **Protection of Free Speech in Civil Agreements**: *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), asserts that speech related to matters of public concern holds **constitutional protection**. Rule 408 cannot protect settlement terms that infringe upon First Amendment rights, as is evident in plaintiffs' use of the agreement to silence Defendant.

d) **Federal Intervention to Protect Against Coercive Legal Tactics**: *Mathews v. Eldridge*, 424 U.S. 319 (1976), supports **federal intervention** when state actions and agreements deny procedural fairness. Plaintiffs' September 26, 2024, settlement agreement in both Alabama and North Carolina demonstrates a need for federal review to ensure compliance with due process standards.

## B. Diversity Jurisdiction (28 U.S.C. § 1332)

1.  In the alternative, this Court has jurisdiction under **28 U.S.C. § 1332** because the parties are from **different states** and the **amount in controversy exceeds $75,000**. The **Defendant, Thomas Fossett,** is a resident of **Canton, Georgia**, while the **Plaintiffs** include:

    a.  **Command Investigations LLC,** headquartered in **Lakeland, Florida**.

        i.   (See **Exhibit X**, Page 2, ¶ 3)

    b.  **Paul and Melinda Seguin,** residents of **Little River, South Carolina**.

        i.   (See **Exhibit X**, Page 2, ¶ 4)

    c.  **Abacus Research, Inc.,** a **North Carolina-based entity** no longer active in operations but relevant to the ongoing legal matter.

        i.   (See **Exhibit X**, Page 2, ¶ 5)

2.  Additionally, **Plaintiffs' attorneys Peter French and Jason Covert** are based in **Indianapolis, Indiana** and are actively involved in the case, further establishing **diversity of citizenship**. The involvement of entities and individuals from **multiple states** reinforces the multistate nature of this dispute. (See **Exhibit X**, Page 3, ¶ 1)

3. This case is further connected to **ongoing litigation in North Carolina** (Case No. **24-CVS-2730**), reflecting the **cross-jurisdictional nature** of the dispute. The plaintiffs' use of multiple state courts appears intended to gain procedural advantages against Defendant across state lines, potentially violating **fair procedural standards** under **ARCP Rule 19** and **NCRCP Rule 19**. Given the **complete diversity of citizenship** and **substantial claims for damages**, federal diversity jurisdiction is warranted under **28 U.S.C. § 1332**. (See **Exhibit A6**.1, Page 1, ¶ 2)

4. **Legal Basis**

   a. **Complete Diversity Requirement**: *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567 (2004), supports federal jurisdiction when parties are from different states, particularly in cases with significant **multistate implications**.

   b. **Federal Court Oversight to Prevent Manipulative Tactics**: *Gunn v. Minton*, 568 U.S. 251 (2013), supports federal intervention when state court proceedings risk being manipulated for procedural advantage across jurisdictions, as is apparent in the plaintiffs' strategy here.

   c. **Fairness and Forum Non Conveniens**: *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981), underscores federal authority to consider fairness when multiple jurisdictions are leveraged for advantage, allowing federal courts to consolidate cases where necessary.

   d. **Application of State Law in Federal Diversity Cases**: *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), supports federal procedural standards while considering state law implications, relevant to ensure fairness given the plaintiffs' use of multiple state venues.

## C. Conspiracy to Violate Federal Law (18 U.S.C. § 371)

1. **Violation of Federal Law and Coordinated Interstate Actions**: The Plaintiffs, including their counsel **Peter French, Jason Covert, and Scott Tippett**, have engaged in a conspiracy to violate federal law under **18 U.S.C. § 371** by:

    a. **Suppressing exculpatory evidence** through coercive injunctions and settlement offers in Alabama and North Carolina, intended to prevent the Defendant from mounting a full defense. (See **Exhibit A5** Page 2, ¶ 2, NC PI Page 2, ¶ 1, **Exhibit X** Page 6, ¶ 17).

    b. **Defrauding the court** by attempting to coerce the Defendant into waiving legitimate claims and dismissing his counterclaims against Plaintiff's counsel, **Scott Tippett**, and through improper settlement terms aimed at silencing the Defendant (See **Exhibit X** Page 6, ¶ 17).

    c. **Obstructing justice through the interstate transportation of stolen property**: The North Carolina Plaintiffs and Scott Tippett have knowingly transported items taken from Defendant's property across state lines as part of this scheme. These items, including a modem and additional surveillance equipment, were taken without the Defendant's consent, violating his property rights and obstructing his defense by depriving him of essential evidence. Although the modem's individual value is below $5,000, its transport, combined with other equipment totaling over $9,000 reflects a **pattern of coordinated interstate theft** intended to disrupt Defendant's ability to defend himself. (See **Exhibit A5**, Page 2, ¶ 2; **Exhibit X**, Page 6, ¶ 17)

2. The Plaintiffs' attorneys, **Scott Tippet, Peter French and Jason Covert**, based in **Indianapolis, Indiana**, actively contributed to drafting and enforcing these coercive settlement terms and injunctions. Their multistate involvement in coordinating property seizure, suppression of evidence, and attempts to silence Defendant further exemplifies the scope of this conspiracy. These actions not only violate **18 U.S.C. § 371** but also infringe

upon Defendant's **First, Fourth, and Fourteenth Amendment rights**. (see **Exhibit X** Page 5, ¶ 5; 6, ¶ 17; Page 8, ¶ 8).

3. **Legal Basis**

    a. **Conspiracy to Deprive Constitutional Rights**: *Dennis v. United States*, 384 U.S. 855 (1966), supports the federal criminalization of conspiracies intending to deprive individuals of constitutional rights. Plaintiffs' coordinated efforts to transport stolen property across state lines, suppress evidence, and obstruct Defendant's defense directly violate **First, Fourth, and Fourteenth Amendment protections**.

    b. **Protection Against Obstructive Tactics and Evidence Suppression**: *Chambers v. Mississippi*, 410 U.S. 284 (1973), ensures the right to present exculpatory evidence. Plaintiffs' **coercive measures to compel Defendant's relinquishment of evidence** essential to his defense infringe on this due process right.

    c. **Obstruction of Justice Through Coercive Settlements and Interstate Theft**: *United States v. Aguilar*, 515 U.S. 593 (1995), clarifies that actions intended to obstruct justice by manipulating evidence and compelling settlement terms constitute obstruction. The plaintiffs' interstate transportation of stolen property, enforced through coerced settlements, aligns with these obstructive tactics.

    d. **Federal Oversight in Multistate Conspiracy Violations**: *Scheidler v. National Organization for Women, Inc.*, 537 U.S. 393 (2003), affirms federal jurisdiction when multistate conspiracies affect individuals' constitutional rights. Here, the plaintiffs' coordinated theft, suppression of evidence, and legal coercion across Alabama, North Carolina, and Indiana merit federal intervention.

4. **State Law and Procedural Violations**:

    a. **Alabama State Court**:

        i. The Alabama state court's preliminary injunction was issued solely based on plaintiffs' affidavits, disregarding **Ala. Code § 6-5-182** and **Alabama Rules of Civil Procedure (ARCP) Rule 65**, which mandate that **evidence of**

24

**falsity** must be presented to justify injunctive relief in defamation cases. By neglecting these statutory requirements, the court has facilitated the plaintiffs' suppression of exculpatory evidence and hindered Defendant's constitutional right to defend himself. (See **Exhibit A5**, Page 2, ¶ 2)

    b.  **North Carolina State Court**:

        i.  The North Carolina state court similarly violated **N.C. Gen. Stat. § 1-485** and **North Carolina Rules of Civil Procedure (NCRCP) Rule 65**, issuing injunctive relief against the Defendant without substantial proof of falsity. This procedural failure not only contravenes state requirements but also enables the plaintiffs' use of injunctive relief as a tool for coercion and evidence suppression, depriving Defendant of a fair and impartial legal process (See **Exhibit A6**, Page 2, ¶ 1).

5.  The plaintiffs' actions constitute a coordinated conspiracy to deprive Defendant of his property rights and suppress his defense through manipulative and coercive practices across state lines. By securing preliminary injunctions without the substantial proof of falsity required by **Ala. Code § 6-5-182** and **Alabama Rules of Civil Procedure (ARCP) Rule 65**, as well as **N.C. Gen. Stat. § 1-485** and **North Carolina Rules of Civil Procedure (NCRCP) Rule 65**, the state courts in Alabama and North Carolina have facilitated plaintiffs' misuse of injunctions as tools of coercion and evidence suppression. This judicial oversight has enabled the plaintiffs to obstruct Defendant's access to due process, denying him the opportunity to present exculpatory evidence and defend himself fully. (See **Exhibit A5**, Page 2, ¶ 1; Page 3, ¶ 1, **Exhibit A6**.1, Page 2, ¶ 1; Page 3, ¶ 1)

6.  **Federal intervention under 18 U.S.C. § 371 is warranted** to address the systemic failure of these state courts to uphold constitutional standards, particularly regarding Defendant's **First Amendment right to free speech, Fourth Amendment protection against unreasonable seizures**, and **Fourteenth Amendment guarantee of due process**. This case highlights the

federal interest in ensuring that state judicial processes do not enable private parties to leverage court power in a manner that infringes upon constitutional protections.

## D. Contribution of Plaintiffs' Attorneys to Constitutional Violations and Harm to Defendant's Livelihood

1. **Intentional Multi-State Strategy to Suppress Defense Evidence and Impose Financial Hardship:**

   a. The plaintiffs' attorneys—**Peter French, Jason Covert, and Scott Tippett**—have orchestrated a multi-state legal strategy designed to deprive Defendant of his constitutional rights across Alabama and North Carolina. By filing coordinated complaints and securing preliminary injunctions within days of filing the complaints, they demonstrate a premeditated intent to overwhelm and financially cripple Defendant. These injunctions aim to suppress exculpatory evidence, restrict Defendant's primary client relationships, and impose severe financial hardship, directly infringing upon Defendant's rights under the **First, Fourth, and Fourteenth Amendments**. (See **Exhibit A5**, Page 2, ¶ 2; Page 3, ¶ 1 - **Exhibit A6**.1, Page 2, ¶ 1; Page 3, ¶ 1)

2. **Injunctions Crafted to Shut Down Defendant's Business and Impose Economic Sanctions:**

   a. The injunctions granted in Alabama and North Carolina were strategically structured to prohibit Defendant from working with investigative agencies—his primary client base. These actions not only block his primary source of income but also strip him of the financial means necessary to support his family and obtain legal representation. The intentional targeting of Defendant's livelihood amounts to an unconstitutional deprivation of his property rights and his ability to engage in lawful trade, a violation of due process as outlined in **Mathews v. Eldridge, 424 U.S. 319 (1976)** and

*Fuentes v. Shevin*, 407 U.S. 67 (1972). (See **Exhibit A5**, Page 3, ¶ 1; **Exhibit A6**.1, Page 2, ¶ 2)

3. **Unified Goal to Silence Defendant without Requiring Evidentiary Proof of Falsity:**

   a.  Both Alabama and North Carolina state courts issued these injunctions without requiring plaintiffs to substantiate their defamation claims with proof of falsity, in direct violation of **Ala. Code § 6-5-182**, **N.C. Gen. Stat. § 1-485**, and procedural rules (ARCP Rule 65, NCRCP Rule 65). The disregard for state law and procedural standards exposes a misuse of judicial authority that further violates Defendant's **First Amendment rights** to freedom of speech and **Fourteenth Amendment rights** to due process. (See **Exhibit A5**, Page 3, ¶ 1; **Exhibit A6**.1, Page 2, ¶ 1)

4. **Legal Basis for Federal Intervention**

   a.  Given the coordinated multi-state actions, the significant constitutional and state procedural violations, and the direct, irreparable harm inflicted on Defendant's ability to support his family and defend himself, federal intervention is warranted. Landmark cases like **New York Times Co. v. Sullivan, 376 U.S. 254 (1964)**, affirm the protection of speech on matters of public concern, while **Soldal v. Cook County, 506 U.S. 56 (1992)** and **United States v. National Treasury Employees Union, 513 U.S. 454 (1995)** confirm that constitutional rights extend to protecting individuals from undue restrictions on lawful employment and economic livelihood.

5. The **Plaintiffs' attorneys' use of judicial power** in a coercive manner, without just cause or procedural compliance, illustrates an abuse of authority. Their actions have forced Defendant into a position of economic and legal disenfranchisement, underscoring the need for federal jurisdiction to ensure constitutional and procedural compliance and to restore Defendant's rights to a fair and unbiased judicial process. (See **Exhibit A5**, Page 3, ¶ 2; **Exhibit A6**.1, Page 2, ¶ 2)

6.  **Legal Basis**

   a.  **Abuse of Judicial Power and Irreparable Harm:** The injunctions represent a **misuse of judicial authority**, violating due process principles upheld in *Fuentes v. Shevin*, 407 U.S. 67 (1972), which mandates that individuals have fair access to the means necessary for their livelihood. The deprivation of Defendant's business operations directly interferes with his ability to protect his family from financial ruin and denies him the resources needed to secure legal counsel, amplifying the harm imposed by these actions.

   b.  **Undue Restrictions on Employment and Livelihood:** The injunction's impact on Defendant's ability to engage in lawful trade with investigative agencies—his primary clients—constitutes an **unconstitutional restraint on lawful work and association**. In *United States v. National Treasury Employees Union*, 513 U.S. 454 (1995), the Supreme Court ruled that unjustifiable restrictions on employment rights are impermissible. By obstructing Defendant's employment and income, these attorneys infringe upon rights protected under federal law.

   c.  **Violation of Defendant's Ability to Seek Judicial Redress:** The **coordinated actions** by plaintiffs' attorneys and the approvals by the courts have deprived Defendant of **essential procedural safeguards**, obstructing his fundamental right to a fair hearing and judicial redress. This deprivation necessitates federal intervention under *Mathews v. Eldridge*, 424 U.S. 319 (1976), which mandates that due process protections be afforded when critical rights are at stake. By imposing injunctions that restrict Defendant's right to defend himself, present exculpatory evidence, and operate his business to fund his defense, the attorneys and courts effectively obstruct Defendant's ability to **meaningfully participate in the judicial process**.

   d.  **Lack of Procedural Safeguards in Injunctive Relief:** The absence of procedural safeguards, such as requiring **proof of falsity** or allowing Defendant an opportunity to present his defense, violates state procedural rules (*Ala. Code § 6-5-182, ARCP*

*Rule 65, N.C. Gen. Stat. § 1-485, and NCRCP Rule 65*) and federal due process standards. These omissions hinder Defendant's ability to access a fair judicial process and amplify the need for federal review to ensure that Defendant's procedural rights, including the right to seek redress, are preserved.

7. **Need for Federal Jurisdiction**

Given the **severity of harm** caused by these injunctions on Defendant's business, personal life, and fundamental rights, **federal jurisdiction is essential** to restore his constitutional rights to **free speech, due process, and property protection**. Federal intervention is warranted to address these significant judicial and procedural oversights, ensuring that **state court actions do not result in the functional deprivation of an individual's livelihood, legal rights, or family support**.

## E. Federal Restrictions on Legal Process (Right to Issue Subpoenas)

1) The **preliminary injunction issued by the state court, in violation of the United States Constitution, applicable state law, and the rules of civil procedure in both North Carolina and Alabama,** imposes an **unjustified restriction on Defendant's ability to lawfully issue subpoenas** to key witnesses, including **former clients, employees, and vendors essential to his defense**. This limitation directly interferes with **Defendant's right to a fair trial** and obstructs his **access to critical evidence and testimony,** as protected under state and federal law. (See **Exhibit A5**, Page 3, ¶ 2; **Exhibit A6**.1, Page 3, ¶ 1)

2) **Legal Basis:**

   a) **Constitutional Right to Subpoena Witnesses for a Fair Trial:** In *Washington v. Texas*, 388 U.S. 14 (1967), the U.S. Supreme Court affirmed that **defendants have a fundamental right to secure testimony and witnesses essential to their defense.**

   b) **Violation of State Law and Procedural Requirements:**

3) **Both North Carolina and Alabama impose stringent requirements** for issuing preliminary injunctions, **mandating substantial proof of falsity and harm** before imposing restrictions

that would limit a party's legal rights, including the issuance of subpoenas. (See **Exhibit A5**, Page 2, ¶ 2; **Exhibit A6**.1, Page 2, ¶ 1)

4) The **North Carolina and Alabama preliminary injunctions disregard these legal standards** by imposing **unjustifiable limitations on Defendant's ability to subpoena key witnesses,** thereby **denying him procedural due process protections essential for a fair defense.** (See **Exhibit A5**, Page 3, ¶ 2; **Exhibit A6**.1, Page 3, ¶ 1)

## F. Obstruction of Compliance with Preliminary Injunction and Violations of Constitutional Rights

1) The **Defendant has been unable to access specific Facebook pages containing critical evidence,** directly referenced by the Plaintiffs, which are necessary for full compliance with the preliminary injunction. These pages are now inaccessible, making it **impossible for the Defendant to gather essential evidence for compliance**. This obstruction raises serious concerns regarding the **Plaintiffs' apparent efforts to suppress exculpatory evidence,** constituting a **violation of the Defendant's First Amendment rights** to free speech and access to information necessary for his defense, as well as **due process rights under the Fourteenth Amendment.** (See **Exhibit A5**, Page 4, ¶ 3; **Exhibit X**, Page 5, ¶ 5)

2) **Jason Covert's October 7, 2024, email,** in which he **denies Defendant's request** for a **comprehensive list of Abacus Research Inc. and Command Investigations' current, former, and prospective clients, employees, and investigators,** exemplifies an **obstruction that undermines Defendant's ability to comply** with the preliminary injunction. By refusing to provide this information, **Plaintiffs effectively hinder Defendant's preparation of a full and fair defense,** violating his **First Amendment right to petition for redress and access critical information.** (See **Exhibit F**, Page 1, ¶ 2)

   a) The Supreme Court, in *Richmond Newspapers, Inc. v. Virginia*, **448 U.S. 555 (1980),** established the principle that **public access to information relevant to judicial**

proceedings is vital to the pursuit of justice. Moreover, this obstruction denies Defendant's **due process rights under the Fourteenth Amendment** by preventing him from fulfilling the injunction's requirements and collecting exculpatory evidence.

b) **The Court's decision in** *Mathews v. Eldridge*, **424 U.S. 319 (1976), reinforced that due process mandates a meaningful opportunity to present evidence in defense.** Covert's email further exacerbates these **constitutional violations** by creating conditions that render compliance impossible, **effectively setting Defendant up for failure** and exposing him to potential penalties.

**These actions also justify federal oversight under 28 U.S.C. § 1443,** as they represent a **pattern of constitutional violations** that federal courts must address to protect **Defendant's First and Fourteenth Amendment rights**.

3) Furthermore, the **state court's failure to protect the Defendant's constitutional rights** has exacerbated these violations. By neglecting to ensure the Defendant had adequate access to critical evidence, the court has allowed the **Plaintiffs to continue obstructing the collection of exculpatory material,** undermining Defendant's right to a fair defense. This **lack of due process by the court contravenes the Fourteenth Amendment,** which mandates that state courts uphold procedural fairness and equal protection under the law. (See **Exhibit A5**, Page 4, ¶ 2; **Exhibit F**, Page 1, ¶ 3)

4) The **obstruction of compliance with the preliminary injunction** and the court's failure to enforce Defendant's constitutional rights **underscore the necessity of federal intervention**. Under **28 U.S.C. § 1331 (federal question jurisdiction)**, these substantial constitutional issues warrant federal review to ensure Defendant's First and Fourteenth Amendment protections are upheld. (See **Exhibit X**, Page 7, ¶ 2)

5) **Legal Basis:**

a) **First Amendment Violations and Access to Exculpatory Evidence:** In *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980), the Supreme Court held that **public**

access to information relevant to a defense is protected under the First Amendment. The Plaintiffs' obstruction of evidence on social media restricts Defendant's ability to gather exculpatory evidence necessary for his case, violating his right to access critical information.

b) **Due Process Requirements Under the Fourteenth Amendment:** In *Mathews v. Eldridge*, 424 U.S. 319 (1976), the Supreme Court established that **due process necessitates a fair opportunity to present evidence in defense**. The court's failure to ensure Defendant's access to these online sources prevents him from fulfilling the preliminary injunction requirements, thereby violating procedural due process.

c) **Federal Oversight of State Court Actions:** *McDonald v. Smith*, 472 U.S. 479 (1985), reaffirms that **federal oversight is required when state courts violate an individual's constitutional rights**. The continued obstruction in this case justifies federal review to protect Defendant's right to due process and freedom of expression, ensuring a fair and impartial judicial process.

## G. Suppression of Evidence Through Electronic Means and Federal Violations

1) **Suppression of Evidence Through Electronic Means:**

a) The **Plaintiffs or their agents** have likely used **electronic means** to restrict the Defendant's access to key Facebook posts **essential for gathering evidence**. Notably, the following posts referenced by the Plaintiffs have been rendered inaccessible, further impeding Defendant's ability to gather **evidence necessary for his defense and compliance**:

   i) **Facebook Post – 2825076591001692**

      (1) **Status:** Restricted Access (See **Exhibit G1**)

      (2) **Link:**

         https://www.facebook.com/groups/150289945147050/posts/2825076591001692/

ii) **Facebook Post – 2826335280875823**

    (1) **Status:** Restricted Access (See **Exhibit G2**)

    (2) **Link:**

        https://www.facebook.com/groups/150289945147050/posts/2826335280875823/

iii) **Facebook Post – 3161683347301988**

    (1) **Status:** Deleted truthful post as ordered (See **Exhibit G3**)

    (2) **Link:**

        https://www.facebook.com/groups/150289945147050/posts/3161683347301988/

2) The **Plaintiffs' use of electronic platforms** to **restrict or delete the Defendant's access** to this evidence raises potential violations of federal statutes, including the **Computer Fraud and Abuse Act (18 U.S.C. § 1030)** and the **Electronic Communications Privacy Act (18 U.S.C. § 2510)**. This **deliberate restriction on Defendant's access to necessary evidence through electronic means** justifies federal jurisdiction under **28 U.S.C. § 1331** and may constitute the following violations: (See **Exhibit X**, Page 5, ¶ 4; **Exhibit F**, Page 1, ¶ 3)

    i) **18 U.S.C. § 1030 (Computer Fraud and Abuse Act):** By utilizing administrative controls to prevent the Defendant from **accessing evidence required for compliance**, the **Plaintiffs or their agents** may have engaged in **unauthorized interference** with Defendant's **legal right to gather evidence.**

    ii) **18 U.S.C. § 2510 (Electronic Communications Privacy Act):** Plaintiffs may have improperly restricted Defendant's access to **critical electronic communications**, necessary for fulfilling obligations under the **preliminary injunction.**

    iii) **18 U.S.C. § 1343 (Wire Fraud Statute):** Plaintiffs, by **manipulating internet access** to evidence essential for Defendant's defense, may have engaged in a **scheme to obstruct lawful access to key evidence.**

    iv) **18 U.S.C. § 1503 (Obstruction of Justice):** Plaintiffs' actions to electronically obstruct **Defendant's access to essential evidence** interfere with the **due administration of justice**, directly implicating federal law.

33

3) The **targeted electronic suppression of critical evidence**, combined with the **Plaintiffs' use of injunctions** to prevent Defendant from effectively defending himself, underscores a **coordinated effort** to limit **Defendant's constitutional and legal rights**. These acts further support federal jurisdiction under **28 U.S.C. § 1331 (federal question)** and **18 U.S.C. § 371 (Conspiracy)**.

## H. Violations of Alabama and North Carolina State Law

1) In addition to **federal constitutional violations**, the **Plaintiffs have violated Alabama and North Carolina state law**, including:

   a) **Improper Use of Injunctions (Rule 65 of the Alabama Rules of Civil Procedure)**: Plaintiffs have used **injunctions as a tool to suppress evidence** and unlawfully prevent the Defendant from asserting valid defenses, in direct violation of **Alabama's Rule 65** governing injunctions. Rule 65 mandates that injunctions should be used equitably and require substantial proof of necessity. The **presiding judge's failure to enforce Rule 65** reflects a procedural **bias favoring the plaintiffs**, undermining **Defendant's rights** to due process and access to a fair legal defense as outlined in **Alabama Code § 6-5-182**. (See **Exhibit A5**, Page 2, ¶ 2; **Exhibit X**, Page 6, ¶ 5)

   b) **Bad Faith and Coercion: September 26, 2024, settlement offer** exemplifies **bad faith and coercion** by demanding that the Defendant dismiss valid legal claims and relinquish **exculpatory evidence essential to his defense** in exchange for monetary compensation. Alabama law requires good faith in settlement negotiations, yet the **court's inaction on this matter** suggests an oversight that **fails to uphold principles of fair dealing and equitable legal practices**, as dictated by **Alabama Code § 6-5-482**. (See **Exhibit X**, Page 7, ¶ 4)

   c) **Judicial Inaction and Bias in North Carolina**: Similarly, in **North Carolina**, the **presiding judge has disregarded procedural rules** designed to protect against **coercive legal tactics** and has failed to address the Plaintiffs' **suppression of exculpatory**

evidence. This judicial inaction violates **North Carolina Rules of Civil Procedure Rule 65**, which mandates proof of falsity and necessity before any injunctive relief. By allowing Plaintiffs to proceed unchecked, the court has shown **bias against the Defendant** by ignoring these protections and **enabling a legal strategy that deprives Defendant of his right to present a full defense.** (See **Exhibit A6**.1, Page 3, ¶ 1)

2) These **state law violations and judicial oversights** in both states **contribute to the violation of Defendant's rights**, making **federal review under 28 U.S.C. § 1331 (federal question jurisdiction)** necessary to rectify these abuses and ensure compliance with **due process standards**.

## I.  Grounds for Removal

1) **Federal Question Jurisdiction:**

This case raises substantial **federal questions** under **28 U.S.C. § 1331**, as it involves **constitutional violations** of the **First, Fourth, and Fourteenth Amendments**. The **Alabama Preliminary Injunction** restricts Defendant's **free speech and due process rights** by mandating the removal of content and surrendering property without a fair opportunity for defense (**See Exhibit A5**, Page 2, ¶¶ 1-9). These actions implicate significant federal interests, warranting removal to federal court.

2) **Procedural Due Process Violations:**

   a) **Denial of Motion to Stay:** On **October 3, 2024**, Defendant filed a **Motion to Stay** in Alabama state court to allow time for defense preparation and to address **procedural concerns** arising from violations of **ARCP, state law, and Constitutional law** in granting the preliminary injunction. This motion was **denied the same day without substantive review**, demonstrating the court's disregard for **due process protections** and preventing Defendant from adequately defending against the injunction's terms (See **Exhibit A6.2 and A6.3**).

b) **Lack of Evidence for Injunctive Relief**: The Alabama injunction was granted solely on **Plaintiff's affidavits** without the legally required **evidence of falsity**, contrary to **Ala. Code § 6-5-182** and **ARCP Rule 65**, which demand a more rigorous standard for **defamation-based injunctive relief** (See **Exhibit A5**, Page 1, ¶ 5; Page 3, ¶ 5). These statutes provide necessary safeguards that were disregarded in this case, underscoring the need for federal review.

3) **Coercive and Illegal Settlement Offer**:

a) On **September 26, 2024**, Plaintiffs issued a **settlement offer** that Defendant deemed illegal, as it **demanded relinquishment of Defendant's property** and included terms designed to influence judicial outcomes in both **Alabama and North Carolina**. The offer attempted to **deny Defendant access to exculpatory evidence** and **interfere with legal representation**, violating **18 U.S.C. § 1503** (*Obstruction of Justice*), **18 U.S.C. § 1512** (*Tampering with Evidence*), and **18 U.S.C. § 371** (*Conspiracy*), as well as state laws on **Civil Conspiracy and Abuse of Process**. Defendant **rejected this offer as illegal**, citing its **coercive terms** that attempted to **force the turnover of exculpatory evidence** and **impose restrictions infringing upon constitutional rights** (See **Exhibit X**, Page 1, ¶¶ 4-9).

4) **Multistate Coordinated Actions and Evidence Suppression**: Plaintiffs' actions in **Alabama and North Carolina** reflect a **coordinated strategy** aimed at suppressing **exculpatory evidence** and silencing Defendant, depriving him of a **fair defense**. The North Carolina injunction (See **Exhibit A6.1**, Page 2, ¶¶ 1-5) mirrors Alabama's restrictive terms, underscoring Plaintiffs' **multistate strategy** to impose **financial and legal hardships** on Defendant through **procedural manipulation**. These coordinated actions implicate federal concerns regarding **obstruction of justice** and justify removal.

5) **Diversity Jurisdiction**

a) This case qualifies for federal jurisdiction under **28 U.S.C. § 1332** due to **diversity of citizenship** among the parties and the amount in controversy. **Defendant, Thomas Fossett, is a resident of Canton, Georgia**, while **Plaintiffs Command Investigations LLC** is

headquartered in **Lakeland, Florida** (See **Exhibit A7**, Page 1, ¶ 2); **Paul and Melinda Seguin** reside in **Little River, South Carolina** (See **Exhibit B1**, Page 3, ¶ 4); and **Abacus Research, Inc.** is a **North Carolina-based entity** relevant to the current legal proceedings. Additionally, **Plaintiffs' attorneys Peter French and Jason Covert are based in Indianapolis, Indiana**.

b) The **amount in controversy exceeds $75,000**, incorporating significant claims related to property rights, constitutional violations, and substantial financial losses due to injunctions and actions coordinated by Plaintiffs across multiple states. This diversity among the parties, combined with the high financial stakes, fulfills the threshold requirements for federal jurisdiction under **28 U.S.C. § 1332**, further supporting removal of this case to federal court.

## Conclusion

For the reasons stated above, **Defendant, Thomas Fossett, respectfully requests** that this **Honorable Court remove the case to the United States District Court for the Northern District of Alabama**, as the case **presents substantial federal questions, involves significant violations of Constitutional Rights**, and includes **a coordinated conspiracy to obstruct justice under federal law**. Removal is essential to ensure that Defendant's **First, Fourth, and Fourteenth Amendment rights are protected**, and to address the Plaintiffs' systematic efforts to **suppress exculpatory evidence** and manipulate the judicial process.

**Defendant hereby demands a jury trial on all issues so triable.**

## List of Exhibits:

1) **Exhibit A1:** September 3, 2024 - Alabama Complaint

a) Initial complaint filed by Plaintiffs in Alabama, marking the start of the case and detailing the allegations against Defendant.

2) **Exhibit A2**: September 4, 2024 - Alabama TRO Order

a) Temporary Restraining Order (TRO) granted by the Alabama court, outlining immediate restrictions on Defendant.

3) **Exhibit A3**: September 9, 2024 - North Carolina Complaint filed

a) Complaint filed in North Carolina, paralleling the Alabama case and involving similar allegations against Defendant.

4) **Exhibit A4**: September 17, 2024 - North Carolina TRO Order

a) TRO issued by the North Carolina court, imposing restrictions on Defendant's actions pending further proceedings.

5) **Exhibit A5**: October 2, 2024 - Alabama Preliminary Injunction Ordered

a) Preliminary injunction granted by the Alabama court, expanding on the TRO with longer-term restrictions against Defendant.

6) **Exhibit A5.0**: September 30, 2024 - Brief in Support of Motion for Preliminary Injunction

a) Plaintiffs' legal brief submitted in Alabama to support their request for a preliminary injunction, outlining their arguments and evidence.

7) **Exhibit A5.1**: July 2, 2024 - Emailed inventory list to C.O.O. of Command Investigations Jason Chofooklun

a) Email from Defendant to Jason Chofooklun, providing an inventory list of items and demonstrating communication between the parties.

8) **Exhibit A5.2**: July 15, 2024 - Received Email regarding inventory list from C.O.O. of Command Investigations Jason Chofooklun

a) Response from Jason Chofooklun acknowledging receipt of the inventory list, relevant to property discussions in the case.

9) **Exhibit A6**: October 1, 2024 - Preliminary Injunction Hearing in North Carolina

a) Record of the hearing in North Carolina regarding the request for a preliminary injunction.

10) **Exhibit A6.1**: October 3, 2024 - North Carolina Preliminary Injunction Ordered

a) Preliminary injunction order issued by the North Carolina court, enforcing additional restrictions on Defendant.

11) **Exhibit A6.2**: October 3, 2024 - DEFENDANT'S MOTION TO STAY PRELIMINARY INJUNCTION

a) Motion filed by Defendant to stay the preliminary injunction in Alabama, seeking relief from its enforcement.

12) **Exhibit A6.3**: October 3, 2024 – Denied Filed Motion to Stay

a) Filing record of Defendant's motion to stay, relevant to procedural aspects of the Alabama case.

13) **Exhibit A7**: October 17, 2024 - Alabama Plaintiff's Motion for Summary Judgment

a) Plaintiffs' request for summary judgment in Alabama, aiming for a ruling without a full trial based on the evidence presented.

14) **Exhibit A8**: October 28, 2024 - Alabama Docket Notice for November 4, 2024

a) Notice of an upcoming docket entry in Alabama, indicating a hearing or proceeding scheduled for November 4, 2024.

15) **Exhibit B1**: July 17, 2024 - Cease-and-Desist Letter from Scott Tippett

a) Letter from Scott Tippett demanding that Defendant cease specific actions, foundational to claims of harassment.

16) **Exhibit B2**: July 19, 2024 - Cease-and-desist demand email from Peter French

   a) Email from Peter French reinforcing cease-and-desist demands against Defendant, relevant to coercion claims.

17) **Exhibit B3**: July 26, 2024 - Cease-and-Desist Response Email from Peter French demanding the Defendant comply with cease-and-desist orders

   a) Further email from Peter French pressing for compliance, demonstrating escalating legal pressure on Defendant.

18) **Exhibit B4**: August 28, 2024 - Cease-and-Desist Letter from Peter French

   a) Additional letter from Peter French continuing the cease-and-desist demands, contributing to the case's narrative of coercion.

19) **Exhibit C1**: September 30, 2024 – Attorney J. Kilgo Letter; 6:43 am

   a) Communication from Attorney J. Kilgo, "There is no Court" to Defendant. Hearing proceeded and Summary Judgement was granted.

20) **Exhibit C2**: July 24, 2024 - Scott Tippett Letter: Admission-Apology Letter for Theft

   a) Letter in which Scott Tippett acknowledges and apologizes for theft, potentially impacting credibility in property claims.

21) **Exhibit D1**: July 10, 2024 – Paul and Melinda Seguin Lie to HCPD to gain access to Defendant's property, as evidenced by HCPD Police Report Narrative.

   a) Police report narrative detailing Paul and Melinda Seguin's interaction with law enforcement, with alleged false claims to access Defendant's property.

22) **Exhibit D2**: Bradley Walters Certified Felony Record

   a) Official record certifying Bradley Walters' felony status, relevant to character assessments and claims of defamation.

23) **Exhibit D3**: FOIA information from the Arkansas State Police

a) FOIA-obtained information from Arkansas State Police, supporting claims related to investigative oversight.

24) **Exhibit D4**: Affidavit of private investigator Paul Dillon confirming Walters' status as a convicted felon and unlicensed investigator.

   a) Affidavit from private investigator Paul Dillon attesting to Bradley Walters' criminal and professional status.

25) **Exhibit E1**: Affidavit of Paul Seguin

   a) Sworn affidavit from Paul Seguin detailing his perspective or statements related to the case.

26) **Exhibit E2**: Affidavit of Melinda Seguin

   a) Sworn affidavit from Melinda Seguin providing her statements relevant to the case.

27) **Exhibit E3**: Affidavit of Jason Chofooklun

   a) Sworn affidavit from Jason Chofooklun, possibly detailing company actions or context relevant to the case.

28) **Exhibit E4**: Supplemental Affidavit of Jason Chofooklun

   a) Additional affidavit from Jason Chofooklun, providing further details or clarifications.

29) **Exhibit F**: October 7, 2024 – Jason Covert Email Denying list for compliance with the Preliminary Injunction

   a) Email from Jason Covert refusing to provide a requested compliance list, impacting Defendant's ability to adhere to court orders.

30) **Exhibit G1**: October 29, 2024 - Facebook Post - 2825076591001692 Restricted Access

   a) A specific Facebook post restricted to Defendant, relevant to social media evidence limitations.

31) **Exhibit G2**: October 29, 2024 - Facebook Post - 2826335280875823 Restricted Access

a) Another restricted Facebook post, demonstrating challenges in gathering digital evidence.

32) **Exhibit G3**: October 29, 2024 - Facebook Post - 3161683347301988 Truthful post Deleted upon Notice

a) A deleted Facebook post, possibly demonstrating issues of content preservation and censorship.

33) **Exhibit H**: July 21, 2024 Email To Plaintiffs Council

34) **Exhibit H.0 -** FALSE AND DEFAMATORY ACCUSATION QUESTIONAIRE

35) **Exhibit H.1 -** invoice 10,750

36) **Exhibit H.2 -** invoice $15,900 Command Invoice #20240715-C

37) **Exhibit H.3 -** EMAIL TO CLIENTS 1

38) **Exhibit H.4 -** EMAIL TO CLIENTS 2

39) **Exhibit X**: September 26, 2024 – Settlement Agreement Offered

a) Settlement agreement proposed by Plaintiffs, potentially involving coercive terms aimed at resolving the case outside of court.

**Respectfully submitted,**

**Thomas Fossett,**

Pro Se

214 Eagle Ridge Lane

Canton, GA 30114

info@sentinel-ig.com

Date: November 2, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing **Notice Of Removal to Federal Court Based on Constitutional Violations, State Law Violations, and Multistate Coordinated Actions** was served upon the Plaintiffs' counsel by email on November 2, 2024.

HARBUCK KEITH HUNT & PALMER LLC

3500 Blue Lake Drive, Suite 440

Birmingham, Alabama 35243

Telephone: 205.547.5540

Facsimile: 205.547.5621

E-mail: bjackson@hkh.law, kkeith@hkh.law

BERRY, BERRY, LITTLE, & CHANEY

P.O. Box 1052

Cullman, Alabama 35056

Telephone: (256) 734-6330

**Email: ajchaney@bblclawfirm.com**

Respectfully submitted,

**Thomas Fossett, Pro Se**

214 Eagle Ridge Lane

Canton, GA 30114

727-729-2655

info@sentinel-ig.com